J-S19019-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDWARD N. DANIELS | : | |
| | : | |
| Appellant | : | No. 2525 EDA 2017 |

Appeal from the PCRA Order July 11, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0012194-2009,
CP-51-CR-0012199-2009

BEFORE:    SHOGAN, J., NICHOLS, J., and PLATT, J.[*]

MEMORANDUM BY NICHOLS, J.:                     **FILED JULY 19, 2018**

Appellant Edwards N. Daniels appeals *pro se* from the order dismissing as untimely his second petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  Appellant claims that he meets the newly-discovered facts exception under 42 Pa.C.S. § 9545(b)(1)(ii) and that he is entitled to relief as to his after-discovered evidence claim.  We affirm.

This Court previously set forth the facts of this case as follows:

During daylight hours on June 27, 2009, at the Piazza Navona apartments, located in [the] Northern Liberties section of Philadelphia, [Appellant] and co-defendants entered the building with semi-automatic weapons with the intention to carry out a robbery.  Each floor of the apartment building contained surveillance cameras, which captured practically every move of

---

[*] Retired Senior Judge assigned to the Superior Court.

[Appellant] and his co-defendants, Keith Epps and Antonio Wright, and the murders of Rian Thal and Timothy Gilmore. Rian Thal was a party promoter, but was also involved in the selling of powder cocaine. She was specifically targeted because word had gotten out that she was to receive a shipment of approximately one half million dollars' worth of powder cocaine, which amounted to eleven or twelve kilos of powder cocaine, which was being transported from Texas to Philadelphia.[3] The two drug couriers, Timothy Gilmore and Edward Emerson, transported the drugs by way of a tractor-trailer to Philadelphia.

On the Friday before the murders, Leon Woodard was moving the cocaine into Ms. Thal's apartment on the seventh floor of the Piazza Navona. Accompanying Mr. Woodard was a man named Vernon Williams who Ms. Thal did not permit into her apartment because she did not trust him. At trial, Mr. Woodard testified that Mr. Williams left his cell phone in Mr. Woodard's vehicle. After the murders occurred, Mr. Woodard saw text messages between Mr. Williams and Mr. Wright that indicated Mr. Woodard was being set up.[6] Unbeknownst to Ms. Thal or Mr. Woodard, Mr. Williams contacted co-defendant, Mr. Epps, about the shipment of cocaine and the drug money tied to its purchase and a plan was hatched to steal it.

Mr. Epps then contacted a friend named Katoya Jones, who lived in the building, and asked her to help him enter the apartment in exchange for a cut of the profits should the robbery scheme succeed.[7] [At] [a]pproximately 3:30 a.m., that Saturday, the 27th, the day of the murders, Mr. Epps called Ms. Jones to let him and his friend, Robert Keith, into the building. This attempted burglary failed because Mr. Epps and Mr. Keith entered the wrong apartment.

Instead of taking that as a sign that the scheme would go awry, the next afternoon, at about 2:00 p.m., Mr. Epps called Ms. Jones again to tell her to allow a friend of his into the building within the next hour. Mr. Epps had planned the robbery with three men, Donnell Murchison, Langdon Scott, and [Appellant]. Around 3:00 p.m., Ms. Jones opened the locked door for Mr. Murchison; Mr. Murchison then opened the door for Mr. Epps and Mr. Scott. Mr. Scott was under the impression that he was buying $4,500 worth of powder cocaine.

According to the testimony of Mr. Scott, once all three men were in the elevator,[9] Mr. Murchison informed Mr. Scott that when he

- 2 -

went to buy the drugs from Mr. Gilmore and Ms. Thal, Mr. Murchison and [Appellant] were going to rob them. At that point, Mr. Scott decided not to go through with the buy and all three of them left the apartment building to report back to Mr. Epps, who was sitting in a white van outside of the apartment building. While Mr. Murchison waited outside of the van, Mr. Scott and [Appellant] entered the van to talk with Mr. Epps.

A friend of Mr. Epps, Caesar Holloway, told him that he would take Mr. Scott home and get a replacement, who turned out to be co-defendant Wright. Around 5:00 p.m., Mr. Wright, [Appellant], and Mr. Murchison entered the Piazza Navona and proceeded to the seventh floor to wait for Ms. Thal and Mr. Gilmore to return. Mr. Wright and Mr. Daniels went to one end of the hallway while Mr. Murchison went to the other in order to box in the victims. Mr. Epps called Mr. Murchison as the two entered the apartment building. As Ms. Thal and Mr. Gilmore exited the elevator, [Appellant] and his co-defendants pulled out guns and announced a robbery. When Mr. Gilmore resisted, Mr. Wright shot him. Mr. Murchison then shot Ms. Thal behind the head killing her instantly. As the three men exited the building, Mr. Murchison noticed that Mr. Gilmore was still alive and shot him twice in the head killing him. All of the men then entered Mr. Epps' van, and fled the scene without the money or the drugs. Police later discovered four kilos of cocaine and over $100,000 in Ms. Thal's apartment.

Later that evening police identified Ms. Jones as a person of interest because she was observed on a surveillance video opening the doors for Mr. Murchison twice. Initially, Ms. Jones lied to police about being involved in the incident and was freed. However, police picked her up again once police reviewed another surveillance video, which showed her letting Mr. Keith into the building. Upon being taken into custody, Ms. Jones gave a statement to the detectives and later pleaded guilty to two counts of third-degree murder, one count of conspiracy, two counts of robbery in the first-degree, and one count of burglary.

Police used Ms. Jones' cell phone records and learned that she and Mr. Epps had been in contact with one another. After police obtained Mr. Epps' cell phone records, the detectives found numerous phone calls to the individuals involved: [Appellant], Mr. Wright, Mr. Scott, Mr. Murchison, Mr. Holloway, and Ms. Jones. According to Detective Ron Dove of the Homicide Unit, on the day of the murders, June 27th of 2009, Mr. Holloway and

Mr. Epps communicated with each other 53 times, Mr. Williams and Mr. Epps 34 times, Mr. Keith and Mr. Epps spoke 52 times, Ms. Jones and Mr. Epps spoke to each other 29 times, Mr. Scott and Mr. Epps communicated with each other 11 times, Mr. Wright and Mr. Epps spoke with each other 4 times, and 36 communications were made between Mr. Murchison and Mr. Epps.[10]  The detective was unable to find any calls placed between Mr. Epps and [Appellant].  The investigation continued and ballistic tests revealed that the bullets in Mr. Gilmore and Ms. Thal's heads belonged to the weapon used by Mr. Murchison. Detectives also arrested Mr. Wright, and he confessed to being involved in the conspiracy to commit the robbery and shooting Mr. Gilmore multiple times. He did not mention anyone else involved in the murders.

During trial, surveillance tapes shown to Mr. Scott allowed him to identify Mr. Murchison and [Appellant] as the men with whom he entered the building.  After giving testimony at a preliminary hearing, Mr. Scott was stabbed numerous times in prison.[11]

In addition thereto, at trial Mr. Woodard identified Mr. Wright in a surveillance video; Ms. Jones identified Mr. Wright, as well as, Mr. Epps and Mr. Halloway as being part of the criminal conspiracy.  Testimony from Mr. Murchison was stricken from the record after he refused to undergo cross-examination.[12]

[Appellant]'s probation officer, Akaga Campbell, testified and identified [Appellant] as one of the men depicted on the surveillance video and still photographs from the video.  She based her opinion on [Appellant]'s recognizable facial features and choice of clothing.  During cross-examination she testified that from February of 2009, until his arrest on July 10, 2009, she saw the [Appellant] four to six times a month.

[3] Rian Thal's business partner, Leon Woodard, was responsible for setting up the deal with a Texas dealer, Kevin Harks, a/k/a Big Bank Hank, who was interested in breaking into the Philadelphia market to sell Mexican cocaine. . . .

[6] Cell phone records confirmed that Mr. Wright sent a text message to Mr. Williams saying, "Yo, dawg, we need this. This is a big one. We can't let this one get by us."

[7] The building required both a key and security code to enter.

[9] The three men entered the building once before, but after Mr. Murchison asked Mr. Scott if he had the money on him to buy the cocaine, Mr. Scott said he did not have the money on him. All three men left the building so that Mr. Scott could retrieve the money.

[10] The phone calls mentioned above were obtained from Mr. Epps' phone number[.] Special Agent William Shute of the FBI was able to determine using cell tower sites and video surveillance tapes, that Mr. Epps made and received 57 phone calls while in the Piazza Navona on the day of the murders.

[11] Mr. Scott's stabbing occurred the day he was moved to the cell block holding [Appellant]. Prior to the testimony, the individuals were involved in a fistfight.

[12] . . . Commonwealth read in statements [Mr. Murchison] gave to detectives, which implicated [Appellant] and co-defendants as those men that took part in the robbery-turned-murder. . . .

*Commonwealth v. Daniels*, 188 EDA 2012, 2013 WL 11253764, at *1-3 (Pa. Super. filed Sept. 27, 2013) (unpublished mem.) (some alterations omitted; some alterations added).

On December 1, 2011, following several days of trial, a jury convicted Appellant of two counts of each of second-degree murder, robbery — serious bodily injury, and conspiracy to commit second-degree murder. Appellant was also convicted of one count of carrying a firearm in public in Philadelphia. On that same day, the trial court sentenced Appellant to two consecutive terms of life imprisonment for the second-degree murder convictions. The trial court also imposed concurrent terms of ten to twenty years' incarceration for the conspiracy convictions, and a concurrent term of two and a half to five years' incarceration for the firearm conviction. The

robbery conviction merged with the murder conviction for sentencing purposes.

Appellant did not file a post-sentence motion. On December 19, 2011, Appellant filed a timely notice of appeal. On appeal, Appellant argued that the trial court erred in not granting his motion for a mistrial and in admitting the identification testimony of his probation officer. *See Daniels*, 2013 WL 11253764, at *4. Appellant also argued that there was insufficient evidence to convict Appellant of two counts of conspiracy. *Id.* This Court affirmed Appellant's convictions but vacated one count of conspiracy as the evidence demonstrated only one single continuing conspiracy. *Id.* at *8. We did not remand for resentencing, however, as *vacatur* of one of the concurrent conspiracy sentences did not affect the overall sentencing scheme. *Id.* Appellant filed a petition for allowance of appeal, which the Pennsylvania Supreme Court denied on February 19, 2014.

On April 14, 2014, the PCRA court docketed Appellant's first *pro se* PCRA petition. The court appointed counsel who filed an amended PCRA petition on May 25, 2015. On January 19, 2016, the PCRA court filed a notice of intent to dismiss Appellant's petition pursuant to Pa.R.Crim.P. 907. On February 16, 2016, the court dismissed Appellant's petition without a hearing. Appellant timely appealed and, on October 20, 2016, this Court affirmed. Appellant filed a petition for allowance of appeal, which the Pennsylvania Supreme Court denied on March 13, 2017.

On June 2, 2017, the trial court docketed the instant *pro se* PCRA petition, his second. In his petition, Appellant argued that on May 3, 2017 he received evidence that Detective Ronald Dove pled guilty to charges arising from his assistance in helping someone flee after that person committed murder. PCRA Pet., 6/2/17, at 4. Appellant further argued that Detectives James Pitts and Ohmarr Jenkins had been involved in several murder cases in which they coerced suspects to make statements. *Id.*

On June 16, 2017, the PCRA court filed a notice of intent to dismiss Appellant's second PCRA petition without a hearing pursuant to Pa.R.Crim.P. 907, stating that the petition was untimely and did not invoke a time-bar exception. *See* Pa.R.Crim.P. 907 Notice, 6/16/17.

On July 3, 2017, Appellant filed a response to the court's Rule 907 notice. In Appellant's response, he stated that he invoked the newly-discovered facts exception to the PCRA time bar alleging as newly-discovered facts the guilty plea and allegations of misconduct of Detectives Dove, Jenkins, and Pitts. *See* Resp. to Notice of Intent to Dismiss, 7/3/17, at 1-2. He claimed that under ***Commonwealth v. Burton***, 158 A.3d 618 (Pa. 2017), the presumption of knowledge as to information in public records does not apply to him. Resp. to Notice of Intent to Dismiss, 7/3/17, at 2.

On July 11, 2017, the PCRA court dismissed his petition. Appellant timely appealed. The PCRA court did not order a Pa.R.A.P. 1925(b) statement of matters complained of on appeal but filed a Rule 1925(a) opinion on August 15, 2017.

In its Rule 1925(a) opinion, the PCRA court explained that Appellant did not meet the newly-discovered facts exception because the information regarding Detective Dove was available in 2013 and the information regarding Detectives Pitts and Jenkins was available in 2016, both well before Appellant filed the instant PCRA. PRCA Ct. Op., 8/15/17, at 6-7. Thus, the PCRA court found that Appellant had not exercised due diligence. *Id.* at 7. Further, the PCRA court explained that even if Appellant had raised his issues in a timely manner, he would not be entitled to relief as to his after-discovered evidence claim. *Id.*

During the pendency of this appeal, Appellant filed *pro se* application for remand which this Court received on January 10, 2018. Appellant claimed he received additional new evidence regarding Detective Pitts.

Appellant raises the following issues on appeal:

1. Whether [Appellant] sufficiently pled an exception to the time-bar to excuse the filing of his PCRA [p]etition after the date his judgment became final[.]

2. Whether [Appellant] can demonstrate that he is entitled to relief on the basis of newly-discovered evidence[.]

Appellant's Brief at 4.

Our standard of review from the dismissal of a PCRA petition is limited to "whether the record supports the PCRA court's determination and whether the PCRA court's decision is free of legal error." ***Commonwealth v. Lawson***, 90 A.3d 1, 4 (Pa. Super. 2014) (citation omitted).

It is well-settled that "the timeliness of a PCRA petition is a jurisdictional requisite." ***Commonwealth v. Brown***, 111 A.3d 171, 175 (Pa. Super. 2015), *appeal denied*, 125 A.3d 1197 (Pa. 2015) (citation omitted). A PCRA petition "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final." 42 Pa.C.S. § 9545(b)(1). A judgment is final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S. § 9545(b)(3).

Courts may consider a PCRA petition filed more than one year after a judgment of sentence became final only if the petitioner pleads and proves one of the following three statutory exceptions:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii).[1]

Because Appellant failed to file the instant PCRA petition within one year of his conviction becoming final,[2] he must satisfy one of the exceptions to the PCRA time bar. Appellant claims that he meets newly-discovered facts exception. *See* 42 Pa.C.S. § 9545(b)(1)(ii).

## I. Newly-Discovered Facts Exception

Appellant argues that he meets the newly-discovered facts exception because he learned of: (1) a guilty plea of one of the detectives involved in his case, Detective Dove; and (2) newspaper articles involving two other detectives involved in his case, Detectives Jenkins and Pitts. Appellant's Brief at 10-11.

To successfully raise the newly-discovered facts exception to the PCRA time bar, a petitioner must show that: (1) "the facts upon which the claim was predicated were unknown" and (2) the facts "could not have been ascertained by the exercise of due diligence." 42 Pa.C.S. § 9545(b)(1)(ii). In determining whether a petitioner has acted with due diligence, we have explained that "[d]ue diligence 'does not require perfect vigilance and punctilious care, but merely a showing the party has put forth reasonable

---

[1] Moreover, a petitioner must file his petition within sixty days of the date the claim could have been presented. *See* 42 Pa.C.S. § 9545(b)(2).

[2] There is no dispute here that Appellant's conviction became final in 2014 and that Appellant's current PCRA petition, filed on June 2, 2017, was facially untimely.

effort' to obtain the information upon which a claim is based." **Commonwealth v. Cox**, 146 A.3d 221, 230 (Pa. 2016) (citation omitted). Moreover, our Supreme Court in **Burton** held "that information which is of public record cannot be deemed 'unknown' for purposes of subsection 9545(b)(1)(ii) **does not apply** to *pro se* prisoner petitioners."[3] **Burton**, 158 A.3d at 638.

Further, this "new-facts" exception does not require us to analyze the merits of the case or the "underlying after-discovered evidence claim." **Brown**, 111 A.3d at 177. "Once jurisdiction has been established, a PCRA petitioner can present a substantive after-discovered-evidence claim." **Id.** at 176 (citation omitted).

### A. Detective Dove

Appellant claims that Detective Dove "pled guilty to several charges related to assistance he provide[d] to help someone flee from arrest after they committed a murder on April 26, 2017." Appellant's Brief at 10.

_____

[3] In so holding, the **Burton** Court discussed the *amicus* brief filed by the Pennsylvania Exonorees, which explained that "the Pennsylvania Department of Corrections' . . . policies do not provide for inmate access to the internet or internet-based tools for legal research, either directly or through prison staff." **Burton**, 158 A.3d at 636. The *amicus* brief further explained that "prison law libraries have limited resources, consisting primarily of case law and statutes, and that the available materials do not include public case dockets or pleadings." **Id.** Finally, the *amicus* brief provided that "obtaining information from outside of prison also is difficult because inmates often cannot afford to pay for the necessary phone calls, stationery, envelopes, postage, and copying fees." **Id.**

Appellant claims that Detective Dove was an "integral part of the investigation in his case." *Id.* He contends that once he "heard about Dove's conviction, he contacted someone who had internet access to copy it and mail it to him." *Id.* This information, he claims, was mailed to him on May 3, 2017. *Id.* He claims that he could not have ascertained the information regarding Detective Dove earlier, through the exercise of due diligence, because he did not have internet access. *Id.* at 11.

Here, Appellant filed the instant petition on June 2, 2017, thirty-seven days after Detective Dove's guilty plea on April 26, 2017. Although the Commonwealth and the PCRA court state that Detective Dove was first accused of improprieties in 2013, the new fact Appellant is alleging is the guilty plea. *See* PCRA Pet., 6/2/17, at 4. While Appellant did not provide when he learned of Detective Dove's guilty plea, he still filed his PCRA petition within sixty days of when his claim could have been presented. *See* 42 Pa.C.S. § 9545(b)(2). Thus, Appellant established that Detective Dove's guilty plea was unknown to him and could not have been ascertained earlier with the exercise of due diligence. *See* 42 Pa.C.S. § 9545(b)(1)(ii).

### B. Detectives Jenkins and Pitts

Appellant claims that Detectives Jenkins and Pitts "were involved in, at least, three cases in which witnesses, or suspects, were coerced to make statements." Appellant's Brief at 11. He argues that these detectives were involved in "taking statements from codefendants in his case." *Id.* He contends that while the articles are dated November 6, 2013, and

September 9, 2016, he "does not have access to Philadelphia local news broadcasts or regular access to Philadelphia newspapers," and could not have obtained this information earlier. *Id.* He further contends that he learned of these articles while discussing his case with another inmate. *Id.*

Here, Appellant did not provide when he learned of the information regarding these two detectives. Appellant merely states that he "was informed about the articles when discussing his case with another inmate" and that he "heard rumors about the allegations." *Id.* at 11, 13. Going by the only dates Appellant provided — November 6, 2013 and September 9, 2016 – Appellant's claim is well past the sixty days of when he could have presented this claim. *See* 42 Pa.C.S. § 9545(b)(2). Even assuming that newspaper articles are facts for purposes of the newly-discovered facts exception, Appellant has not established that he exercised due diligence in discovering the articles after he learned of their existence.[4] *See* 42 Pa.C.S. § 9545(b)(1)(ii); *Cox*, 146 A.3d at 230.

_____

[4] On January 10, 2018, this Court received Appellant's *pro se* application for remand, in which Appellant claimed he received additional new evidence regarding Detective Pitts. Appellant asserted that on November 3, 2017, in *Commonwealth v. Dwayne Thorpe*, a PCRA court granted relief, in part, on the petitioner's claim that "[a]fter-discovered evidence established Detective Pitts' habitually coercive conduct towards witnesses in custodial interrogations[.]" App. for Remand, 1/10/18, Ex. A. He asserted that on November 7, 2017, an attorney informed of the ruling in *Thorpe* and recommended that he file a PCRA petition based on *Thorpe*. *Id.* Ex. B. He further asserts that he has obtained copies of the transcripts of the hearing in *Thorpe* and that the transcripts provide "additional evidence to substantiate his claim of newly-discovered evidence." *Id.* at 2.
*(Footnote Continued Next Page)*

Accordingly, we conclude that Appellant successfully invoked the newly-discovered facts exception only as to Detective Dove.

## II.  After-Discovered Evidence Claim

Appellant claims that he is entitled to relief as for his after-discovered evidence claim regarding Detective Dove.  He argues that Detective Dove pled guilty on April 26, 2017 and, thus, Appellant could have not learned of this new fact earlier through the exercise of due diligence.  Appellant's Brief at 15.  He claims the evidence will not be merely cumulative or corroborative of other evidence presented at trial because "[t]here was no substantial information presented at trial to undermine the detective[']s credibility and reliability of [his] investigation."  *Id.* Appellant contends that he will not present this evidence for impeachment purposes, rather, to undermine the reliability of the investigation.  *Id.* at 16.  Finally, Appellant contends, the evidence will likely return a different verdict if a new trial were granted because the evidence against him is not overwhelming given that only two witnesses implicated him in the crime.  *Id.*

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

However, as stated above, the timeliness requirements of the PCRA are jurisdictional in nature and require the petitioner to plead and prove an exception to the PCRA time bar.  *Brown*, 111 A.3d at 175.  Nevertheless, the matters alleged in Appellant's application for remand arose while this appeal was pending.  Under these circumstances, we deny Appellant's application for remand without prejudice to the opportunity to file a PCRA petition seeking relief from the PCRA time bar within sixty days of the resolution of this appeal.  *See Commonwealth v. Lark*, 746 A.2d 585, 588 (Pa. 2000).

- 14 -

The Pennsylvania Supreme Court has explained that for a petitioner to obtain relief, he or she must establish that: "(1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict." *Commonwealth v. Washington*, 927 A.2d 586, 595-96 (Pa. 2007).

Here, the PCRA court's Rule 1925(a) opinion, it explained that even if Appellant had raised his issues in a timely manner, he would not be entitled to relief as to his after-discovered evidence claim. PCRA Ct. Op., 8/15/17, at 6-7. First, the court stated, the accusations against the detective is "years old," thus, Appellant did not act diligently. *Id.* at 7. Second, Appellant "failed to provide any indication that the [Detective Dove] altered evidence or committed any wrongdoing in the instant matter." *Id.* Third, the court reasoned that Appellant had not indicated how, other than impeachment, he would use the information. *Id.* at 8. Fourth, the court stated, Appellant "cannot show that the information set forth in his PCRA petition would have let to a different outcome as the Commonwealth presented overwhelming evidence of [Appellant]'s guilt." *Id.* "There is not reasonable probability that the information [Appellant] here provided could undermine confidence in his conviction. *Id.*

While Appellant established that he could not have obtained the information regarding Detective Dove's guilty plea earlier through the

exercise of due diligence, his after-discovered evidence claim fails nonetheless. Appellant states that the evidence would not be cumulative because there was no evidence presented at trial directed at undermining Detective Dove's credibility. Appellant's Brief at 15. However, Appellant cannot offer the after-discovered evidence solely to impeach a witness's credibility. *See Washington*, 927 A.2d at 96. Further, the evidence would not likely compel a different verdict. Detective Dove's testimony at trial was that he was not part of the "original group of detectives handling the investigation." N.T., 11/21/11, at 27. He explained that he was limited to analyzing phone records. *Id.* More specifically, he testified that he "received a number that was suggested that it was [Appellant's] number," but he was "unable to verify that that was [Appellant's] number." *Id.* at 70. Therefore, Detective Dove presented no testimony against Appellant, and a new trial would with evidence regarding Detective Dove's guilty plea would not compel a different verdict in Appellant's case. *See Washington*, 927 A.2d at 596.

Accordingly, we conclude that Appellant's substantive after-discovered evidence as to Detective Dove claim lacks merit.

Order affirmed. Application for remand denied without prejudice.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/19/18